IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ERBY CONLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF ERIE, PENNSYLVANIA; )<br>CASIMIR KWITOWSKI, Controller, )<br>City of Erie; IAN MURRAY, City )<br>Council Member, City of Erie; JAMES )<br>CASEY, City Council Member, City of )<br>Erie; JAMES THOMPSON, City Council )<br>Member, City of Erie; and JOSEPH )<br>SINNOT, Council Member, City of Erie, )<br>)<br>Defendants. )<br>) | Civil Action No. 05-322 ERIE |

## OPINION

COHILL, D.J.

In this employment discrimination action Plaintiff Erby Conley, the former Public Safety Director for the City of Erie, sues Casimir Kwitowski, the Controller of the City of Erie, four City of Erie Council Members, Ian Murray, James Casey, James Thompson, and Joseph Sinnot, and the City of Erie. Mr. Conley asserts that the Defendant City of Erie discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1967 (42 U.S.C. § 2000(e) *et seq.*) (Count I); that the actions of the individual Defendants resulting in Mr. Erby's constructive discharge as the Public Safety Director violated 42 U.S.C. § 1981 (Count II); and that the individual Defendants and the City of Erie, through municipal policy established by the individual Defendants, violated 42 U.S.C. § 1983 (Count III).

The four Council Member Defendants have filed a motion to dismiss arguing that they are entitled to absolute legislative immunity, and Defendant Controller Casimir Kwitowski has filed a motion to dismiss arguing that he is entitled to qualified immunity.

As set forth below, we will grant Defendants' motions and dismiss Defendants Ian Murray, James Casey, and Joseph Sinnot from this action. Defendants James Thompson and Casimir Kwitowski will not be dismissed to the extent that additional alleged claims against these Defendants were not presented for disposition at this time.

I. Background

The factual background to this case is as follows. Plaintiff Erby Conley, an African-American, was appointed to the position of Public Safety Director for the City of Erie on January 12, 2004, by the Mayor of the City of Erie. (Compl. ¶¶ 12-13.) The City Council of the City of Erie formally approved the appointment on September 9, 2004. (Compl. ¶ 14.)

The position of Public Safety Director for the City of Erie is a position specifically authorized by City Ordinance Section 117.03 of 1987 enacted in 1987. (Compl. ¶ 13.) The Optional City Charter Law provides that as Department Head, Plaintiff could only be removed from his employment by the Mayor after notice and a right to be heard. (Compl. ¶ 25.)

On December 22, 2004, the City Council passed the 2005 fiscal year budget, in which the Council had eliminated funding for the Public Safety Director's position. (Compl. ¶ 15.) Notwithstanding the 2005 budget, the Mayor asked Plaintiff to continue working with the understanding that he would be paid from other sources. (Compl. ¶ 16.) Plaintiff did report to work in January 2005. When the Finance Director presented Plaintiff's first pay check to Controller Casimir Kwitowski for signature, Kwitowski refused to countersign the pay check. (Compl. ¶ 17.)

2

On January 10, 2005, Kwitowski informed the Finance Director that he would not sign any pay checks for Plaintiff on the advice of Defendant Councilman James Thompson. (Compl. ¶ 18.)

Plaintiff asserts that he was unlawfully constructively discharged from his position on January 1, 2005. (Compl. ¶ 19.) He further claims that the City of Erie, acting through the individual Defendants, was motivated by an intent to discriminate against him because of his race. (Compl. ¶ 20.) In particular, Plaintiff claims that the City discriminated against him by ceasing to pay him when it had continued to pay similarly situated caucasian Department Heads whose salaries had been eliminated by City Council, from funds outside the employees' respective departments. (Compl. ¶¶ 19, 21, 29.)

II. Standard of Review

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). While a court will accept well-pleaded allegations as true for purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977).

Defendant Kwitowski has attached relevant opinions issued by (1) the Court of Common Pleas of Erie County, and (2) the Commonwealth Court of Pennsylvania, which we may consider. The Common Pleas Court opinion, Filippi v. Kwitowski, No. 10180-2005, Op. (Court of Common Pleas of Erie County April 4, 2005), is attached as Exhibit 1 to Kwitowksi's Motion to Dismiss; and the Commonwealth Court opinion affirming the Common Pleas Court opinion, Filippi v. Kwitowski, No. 703 C.D. 2005, Op. (Pa.Commw. July 19, 2005), is attached as Exhibit 2.

III. Discussion

We address the Defendants' motions for dismissal based on immunity below. In addition to responding directly to Defendants' arguments Plaintiff also argues that Defendants Thompson and Kwitowski should not be dismissed because some of their alleged conduct is not immune from suit. As explained below in more detail, this alleged conduct is not the subject of Defendants' motions and thus we make no ruling on these additional claims.

A. Absolute Legislative Immunity of the City Council Members

The City Council Members argue that they are entitled to absolute legislative immunity for their actions in approving the 2005 City of Erie budget, which eliminated funding for the position of Public Safety Director of the City of Erie. In support of their argument, the Council Members cite the United States Supreme Court decision in Bogan v. Scott-Harris, 523 U.S. 44 (1998).

In Bogan, the mayor proposed a budget that included a proposal to eliminate the position of the plaintiff. The ordinance committee of the city council drafted and approved an ordinance that eliminated the Department of Health and Human Services, of which plaintiff was the sole employee. The city council then adopted the ordinance, and the mayor signed the ordinance into law, effectively eliminating plaintiff from her job.

The Supreme Court held "that local legislators are . . . absolutely immune from suit under § 1983 for their legislative activities." Id. at 49. The Supreme Court went on to rule that the city council's adoption of the ordinance that eliminated plaintiff's job was a legislative activity shielded by legislative immunity. Id. at 55-56. The Supreme Court did not "require an act to be legislative in both 'formal[] character' and substance in order to enjoy immunity," however, in Bogan, the Court noted that "the budget ordinance in substance 'bore all the hallmarks of traditional legislation' because it 'reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.'" Youngblood v. DeWeese, 352 F.3d 836, 840 (3d Cir. 2003)(quoting Bogan, 523 U.S. at 55-56).

Here, the City Council Members argue that the facts of this case are similar to Bogan. The City Council Members are being sued for their conduct in approving the 2005 budget. Part of that budget eliminated funding for Plaintiff's position. The City Council Members argue that their actions, like those of the city council in Bogan, are within the sphere of legitimate legislative conduct protected by absolute legislative immunity and that therefore the claims against them must be dismissed.

In response, Plaintiff argues that the City Council Members' conduct in approving the 2005 budget is distinguishable from Bogan because the city council in Bogan voted to pass an ordinance, which is a "quintessentially legislative function." (Plaintiff's Brief in Opposition to City Council Member Defendants, at 4.) Plaintiff fails to explain in any detail how the City Council Member's act of voting to approve an annual budget is not also a legislative function. Moreover, just as in Bogan, the City of Erie Council passing an annual budget reflects "a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its

5

constituents." Bogan, 523 U.S. at 55-56. Accordingly, the City Council Members' activity of voting for the 2005 budget was "undoubtedly legislative" and therefore the City Council Members are protected by absolute legislative immunity for such conduct. Id. at 56.

However, Plaintiff goes on to argue that immunity does not apply here because the *result* of the Council Members' act of approving the 2005 budget is not a legislative function. Plaintiff argues that the result at issue is the elimination of Plaintiff's position. He further argues that terminating Plaintiff is a power reserved to the Mayor. Because the City Council's actions effectively eliminated Plaintiff's position Plaintiff thus concludes that the City Council Members improperly usurped powers specifically reserved to the executive branch, taking their conduct outside the realm of legislative activity.

Initially we note that Plaintiff does not claim that approving the budget is not legislative in nature, nor does he claim that approving the 2005 budget in particular was unlawful. Rather he asserts that there was an improper usurpation of executive powers even though voting for an annual budget is a fundamental protected legislative activity. Assuming that Plaintiff is correct, such a state of affairs might raise a separation of powers issue, despite the lawfulness of Council's action. However, the issue is not raised in the Complaint and an argument on separation of powers is not developed in the briefs. Moreover, it is an issue best resolved in the appropriate state forum.

The issue before us remains whether the conduct at issue is legislative activity shielded by legislative immunity. We see no improper usurpation of power at all. Council properly voted on a budget, and the Mayor approved and signed the budget. Nothing in the budget purports to remove Plaintiff from his employment in contravention of the power reserved to the Mayor. (See Compl. at ¶ 25.) The result of the Council Member's act cannot be narrowly described as the City Council

6

terminating *this* Plaintiff. As in <u>Bogan,</u> the budget involved the elimination of funding for Plaintiff's position, "which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." <u>Bogan</u>, 523 U.S. at 56. The facts of this case are similar to <u>Bogan</u> in which "municipal officials were immune from a plaintiff's claim that the officials violated her civil rights when they enacted a budget that eliminated her position." <u>Youngblood</u>, 52 F.3d at 840 (citing 523 U.S. at 55). Likewise in this case the City of Erie Council Members performed a legislative function protected by absolute legislative immunity, and we will dismiss the Complaint as asserted against these Defendants.

### B. Plaintiff's Argument Regarding Defendant Thompson

Plaintiff also argues that even if the Council Members are absolutely immune for approving the 2005 budget, Defendant Thompson is not immune from suit for his action in advising Defendant Kwitowski "not to pay Plaintiff from other sources, despite the fact that this had been done under similar circumstances for caucasian department heads in the past." (<u>Plaintiff's Brief in Opposition to City Council Member Defendants</u>, at 5 citing <u>Compl.</u> at 18, 30.) Had there been an allegation like that in the Complaint, we could address Plaintiff's argument. However, we find no explicit allegation in the Complaint that Thompson advised Kwitowski not to pay Plaintiff *from other sources*.

Paragraph 18 of the Complaint states:

> 18. By memorandum dated January 10, 2005, Defendant Kwitowski advised the Finance Director that on the advise of Defendant Thompson, [Kwitowski] would not sign any pay checks for Plaintiff.

The Complaint contains no allegation as to the details on which Thompson's advice was based. However, we do find an explanation set forth in <u>Filippi v. Kwitowski</u>, No. 10180-2005, Mem. Op.

7

(Court of Common Pleas of Erie County Aril 4, 2005). (Attached as Ex. 1 to Defendant Kwitowski's Motion to Dismiss). Judge Ernest J. DiSantis, Jr. set forth the factual background of the case and explained that Kwitowski "per memorandum dated January 10, 2005, advised the Finance Director that he would not sign the check because he had been advised by the City Council President, Mr. James Thompson *that the funding had been cut.*" Filippi, No. 10180-2005, Mem. Op., at 2 (emphasis added). Thompson's alleged statement that the funding had been cut is nothing more than a verbal expression of what Thompson knew was a true statement regarding the 2005 budget that he and other Council Member's approved.

It appears that Plaintiff's allegation is that Thompson acted in a discriminatory manner towards Plaintiff by refusing to advise Kwitowski to authorize payment to Plaintiff *from other sources* because two similarly situated employees outside of Plaintiff's class were paid from other sources. There is no allegation in the Complaint that Thompson explicitly advised Kwitowski not to pay Plaintiff *from other sources*. In addition, there are no allegations in the Complaint to support Plaintiff's purported argument that Thompson *implicitly* advised Kwitowski not to pay Plaintiff from other sources. Finally, there are no allegations that Thompson had the power or authority to advise Kwitowski to pay Plaintiff from other sources and that such other sources in fact were funded. Thus, we have insufficient information to determine this issue. It is not clear to the Court that Plaintiff's claim against Thompson is even asserted in his Complaint. In addition, if it is asserted, there is no motion to dismiss such a claim asserted by Thompson. Thus, the issue of whether the alleged specific claim against Thompson should be dismissed is not before the Court for disposition.

We will leave it to the parties to determine whether a motion to amend the Complaint will be filed to flesh out the alleged claim, whether Thompson will file an additional motion to dismiss the alleged claim, or whether the parties are content to move on to discovery.

### C. Qualified Immunity of the City Controller Kwitowski

Defendant City Controller Casimir Kwitowski argues that the claims asserted against him should be dismissed because he is entitled to qualified immunity applicable to executive branch government officials performing discretionary functions.

Kwitowski explains that he faced the following situation. The 2005 budget passed by City Council did not fund Plaintiff's position. Plaintiff arrived for work in January 2005 and demanded that Kwitowski sign his pay check. Kwitowski refused to sign the pay check because he had a good faith basis to conclude that the funds were not available. He argues that there was no precedent for this scenario, and in fact, the Mayor filed suit in Common Pleas Court to determine if Kwitowski could be compelled to sign the pay check as a ministerial act.

The Common Pleas Court determined that signing the check was a discretionary function that Kwitowski could not be compelled to perform when he had a good faith basis to believe the funds were not available. Filippi, No. 10180-2005, Op. at 14. The Commonwealth Court affirmed the Common Pleas Court explaining that the "Controller may not be compelled to sign a salary check when there is no appropriation of money with which to pay that check." Filippi, No.703 C.D. 2005, Op., at 6. The Commonwealth Court concluded "that there is no mandatory duty to require Controller to authorize a payment that is not funded in the budget, [the] Mayor is not entitled to mandamus relief." Id. at 8. Thus, Kwitowski argues that his conduct in not signing the pay check did not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. (Kwitowski's Brief in Support of Motion to Dismiss, at 2 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982).)

In response, Plaintiff argues that although Kwitowski was ultimately determined to have the discretion to not sign a pay check that is not funded in the budget, the issue here is whether Kwitowski exercised his discretion in not signing the check in a discriminatory manner. Specifically, Plaintiff argues that Kwitowski had authorized pay checks to two white department heads whose salaries had been eliminated by City Council. The two employees were paid from sources outside their respective departments (departments that presumably no longer had funding to pay the employees' salaries). Thus, Plaintiff argues that Kwitowski acted in a discriminatory manner towards him by refusing to authorize his pay check when Kwitowski knew he had previously authorized pay checks for similarly situated employees outside of Plaintiff's class.

Similar to the allegations regarding Defendant Thompson, there appears to be at least one necessary allegation missing from Plaintiff's description of the events. Namely, that Kwitowski had authority or discretion to authorize payment to Plaintiff from other sources and that such other sources in fact had funds. Kwitowski's mere knowledge that similarly situated white employees were paid from other sources when their salaries were eliminated does not imply that Kwitowski had the authority to pay Plaintiff's salary from another source. Perhaps he did, but there is no allegation in the Complaint to that effect. Moreover, there is no allegation in the Complaint that the funds existed in other sources.

In fact, there is little information before the Court regarding the two similarly situated white employees' circumstances. Therefore, we cannot determine at this stage whether Kwitowski violated Plaintiff's statutory and constitutional rights by refusing to sign a pay check for Plaintiff

10

when he had previously signed pay checks for two similarly situated white employees who were paid from funds from other sources. Although Kwitowski is entitled to qualified immunity to the extent that he refused to sign Plaintiff's pay check because the payment was not funded in the budget, we lack sufficient information at this stage to completely dismiss Kwitowski from this action.

Again, we will leave it to the parties to determine whether a motion to amend the Complaint will be filed to flesh out the alleged claim, whether Kwitowski will file an additional motion to dismiss the alleged claim, or whether the parties are content to move on to discovery.

IV. Conclusion

Plaintiff's claims asserted against Defendant City Council Members will be dismissed because these Defendants are entitled to absolute legislative immunity for their conduct in approving the 2005 budget. Defendant Kwitowski is entitled to qualified immunity to the extent that he refused to sign Plaintiff's pay check because the payment was not funded in the budget.

As explained in this Opinion, there is some question as to alleged claims asserted against Defendants Thompson and Kwitowski. There are insufficient allegations and/or record evidence to determine whether these additional claims against Kwitowski and Thompson are properly asserted, and if so, whether they should be dismissed. Thus, although we grant the motions to dismiss, we will not dismiss these Defendants at this time.

An appropriate Order follows.

_Feb. 21, 2006_
Date

_Maurice B. Cohill_
Maurice B. Cohill, Jr.
Senior United States District Judge