IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERBY CONLEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-322 ERIE |
| CITY OF ERIE, PENNSYLVANIA; CASIMIR KWITOWSKI, Controller, City of Erie; and JAMES THOMPSON, City Council Member, City of Erie, | ) |
| Defendants. | ) |

## OPINION

COHILL, D.J.

In this employment discrimination action Plaintiff Erby Conley, the former Public Safety Director for the City of Erie, sues Casimir Kwitowski, the Controller of the City of Erie, James Thompson, a City of Erie Council Member, and the City of Erie. In 2004, the City Council of Erie passed a budget ordinance that eliminated funding for Mr. Conley's position. The Mayor of the City of Erie asked Mr. Conley to report to work in 2005 promising him that he would be paid. However, when Kwitowksi was asked to authorize Mr. Conley's paycheck in January, 2005, he refused, in part, based on advice from Thompson.

Mr. Conley asserts that the Defendant City of Erie discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1967 (42 U.S.C. § 2000(e) *et seq.*) (Count I); that the actions of the individual Defendants resulting in Mr. Erby's constructive discharge as the Public Safety Director violated 42 U.S.C. § 1981 (Count II); and that the individual Defendants and

the City of Erie, through municipal policy established by the individual Defendants, violated 42 U.S.C. § 1983 (Count III).

We granted the previously filed motions to dismiss of Kwitowski and Thompson. We found that Thompson was entitled to absolute legislative immunity for his conduct in approving the 2005 budget, which eliminated funding for Plaintiff's position. We also found that Kwitowski was entitled to qualified immunity to the extent that he refused to sign Plaintiff's pay check because the payment was not funded in the budget. We did not dismiss Thompson and Kwitoski, however, because Plaintiff argued that Thompson and Kwitowski committed other conduct that was not immune from suit. This other conduct was not clearly stated in the Complaint and was not before the Court for resolution. Subsequently, Plaintiff filed an Amended Complaint in which he added allegations regarding conduct of Kwitowski and Thompson that he asserts is not immune from suit. In response, Kwitowski and Thompson each filed a second motion to dismiss, which are not ripe for resolution.

For the reasons stated below we will grant Defendants' motion to dismiss

I. Background

The factual background to this case is as follows. Plaintiff Erby Conley, an African-American, was appointed to the position of Public Safety Director for the City of Erie on January 12, 2004, by the Mayor of the City of Erie. (Am. Compl. ¶¶ 9-10.) The City Council of the City of Erie formally approved the appointment on September 9, 2004. (Am. Compl. ¶ 11.)

The position of Public Safety Director for the City of Erie is a position specifically authorized by City Ordinance Section 117.03 of 1987 enacted in 1987. (Am. Compl. ¶ 10.) The Optional City Charter Law provides that as Department Head, Plaintiff could only be removed from

his employment by the Mayor after notice and a right to be heard. (Am. Compl. ¶ 25.)

On December 22, 2004, the City Council passed the 2005 fiscal year budget, in which the Council had eliminated funding for the Public Safety Director's position. (Am. Compl. ¶ 13.) Notwithstanding the 2005 budget, the Mayor asked Plaintiff to continue working with the understanding that he would be paid from other sources. (Am. Compl. ¶ 14.) Plaintiff did report to work in January 2005. When the Finance Director presented Plaintiff's first pay check to Controller Casimir Kwitowski for signature, Kwitowski refused to countersign the pay check. (Am. Compl. ¶ 15.)

In a memorandum dated January 5, 2005, Thompson informed Kwitowski in part as follows:

> As City Council President for 2005, I would respectfully request that you do not authorize or sign any payroll check for Mr. Erby Conley, the former Public Safety Director.

(Ex. 2, attached to Plaintiff's Amended Complaint.) Kwitowski in fact did follow this request, when on January 10, 2005, he informed the Finance Director by memorandum that he would not sign any pay checks for Plaintiff on the advice of Thompson. (Am. Compl. ¶ 16, 30.)

Plaintiff further alleges that Thompson's January 5, 2005 memorandum to Kwitowski "acknowledges that there are legal ways in which Plaintiff could be paid from other budgeted funds." (Am. Compl. at ¶ 29.) In this regard, Thompson's January 5, 2005 letter states as follows:

> The only way legally that Mr. Conley can be paid as I see it is that he must be paid ou[t] of an existing budgeted position such as a Captain in the Bureau of Fire or Police i[f] a vacancy exists.

(Ex. 2, attached to Plaintiff's Amended Complaint.)

Plaintiff asserts that he was effectively constructively discharged from his position on January 1, 2005, through Thompson and Kwitowski's actions. (Am. Compl. ¶ 17, 32.) He further

3

claims that the City of Erie, acting through the individual Defendants, was motivated by an intent to discriminate against him because of his race. (Am. Compl. ¶ 20.) In particular, Plaintiff claims that the City discriminated against him by ceasing to pay him when it had continued to pay similarly situated caucasian Department Heads whose salaries had been eliminated by City Council, from funds outside the employees' respective departments. (Am. Compl. ¶¶ 18, 19.)

With respect to Thompson and Kwitowski, Plaintiff asserts that each of them had treated similarly situated individuals outside the protected class more favorably. (Am. Compl. at ¶ 34.) Specifically, Plaintiff alleges that the "City Council of the City of Erie had previously purportedly eliminated the salaries of Caucasian Department Heads, including Mayor's Assistant Tina Mengine and Manager of Administration Jeff Gault, but these individuals continued to be paid from sources outside the employees' respective departments by the Defendant Controller without objection from Defendant Thompson." (Am. Compl. at ¶ 34.)

Plaintiff further alleges that at the time that Plaintiff's employment was constructively terminated, January 10, 2005, Plaintiff could have been paid from funds that were available in the police and fire budget. (Am. Compl. at ¶ 36.) Also, as of January 10, 2005, Plaintiff alleges that the Mayor of Erie had taken steps to effectuate his proposed plan to pay Plaintiff from other funds available in the police and fire budget. (Am. Compl. at ¶ 35.)

Finally, Plaintiff asserts that municipal liability is appropriate based on the individual Defendants' actions. Plaintiff alleges that Thompson established municipal policy through the exercise of his discretionary powers and authority as President of the Erie City Council by requesting that Kwitowksi not sign or authorize any paychecks for Plaintiff, even though he acknowledged that there might be legal ways to pay Plaintiff. (Am. Compl. at ¶ 41, 42.) Plaintiff

also alleges that Kwitowski established municipal policy through the exercise of his discretionary power over the countersigning of payroll checks by refusing to sign or authorize paychecks for Plaintiff. (Am. Compl. at ¶ 41, 42.)

II. Standard of Review

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). While a court will accept well-pleaded allegations as true for purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, *Ga.*, 433 U.S. 25, 27 n.2 (1977).

In his first motion to dismiss, Defendant Kwitowski attached relevant opinions issued by (1) the Court of Common Pleas of Erie County, and (2) the Commonwealth Court of Pennsylvania, which we may consider. The Common Pleas Court opinion, Filippi v. Kwitowski, No. 10180-2005, Op. (Court of Common Pleas of Erie County April 4, 2005), is attached as Exhibit 1 to Kwitowski's Motion to Dismiss; and the Commonwealth Court opinion affirming the Common Pleas Court opinion, Filippi v. Kwitowski, No. 703 C.D. 2005, Op. (Pa.Commw. July 19, 2005), is attached as Exhibit 2.

5

III. Discussion

Plaintiff's newly asserted allegations set forth in his Amended Complaint are the sole reason that Defendants filed their second motions to dismiss. Plaintiff's claims are based on the disparate treatment of Plaintiff compared to how two similarly situated Caucasian employees were treated in the past.

According to Plaintiff, in 2004 two similarly situated Caucasian employees continued to be paid from funding sources outside their departments when funding for their positions was cut from the budget. Kwitowski authorized these payments. Thompson did not object to the two employees being paid from funding sources outside their departments, nor did he write a letter to Kwitowski requesting him not to authorize the two employees' pay checks.

In contrast, Plaintiff alleges that Thompson wrote the January 5, 2005 letter to Kwitowski requesting that Kwitowski not authorize or sign any payroll check for Mr. Conley, and Kwitowski did not authorize any payment to Plaintiff. In addition, Thompson requested Kwitowski not to authorize payment to Plaintiff, even though he acknowledged that legal means of paying Plaintiff might be available.

According to Plaintiff's allegations, funding for the Caucasian employees had been cut, yet they were paid from other sources that had available funds. With respect to his situation, Plaintiff claims that outside funding sources similar to the sources used in 2004 to pay the Caucasian employees were available to pay Plaintiff at the time of Thompson and Kwitowski's actions in January 2005. He claims that "funding was available" to pay Plaintiff "from at least the police and fire budget," which was "similar to the means" used to pay the two Caucasian employees in 2004. (Am. Compl., at ¶¶ 34, 36.) Not only were other funds available, but Plaintiff also claims that the

6

Mayor had "proposed paying Plaintiff from funds that were available in the police and fire budget and had taken steps to effectuate this plan." (Am. Compl., at ¶ 35.)

Kwitowski argues that Plaintiff's new allegations do not change our previous conclusion that Kwitowski is entitled to qualified immunity for refusing to sign Plaintiff's pay check. Thompson argues that the new allegations fail to state a claim against him, and even if they did state a claim Thompson would be entitled to qualified immunity for his actions. Viewing the facts in a light most favorable to Plaintiff and accepting that Plaintiff was treated differently than the two Caucasian employees we nonetheless conclude that Plaintiff cannot sustain his claims against Kwitowski and Thompson.

### *Kwitowski is Entitled to Qualified Immunity*

Plaintiff does not allege in his Amended Complaint that Kwitowski had the authority or discretion to authorize payment to Plaintiff from the other available funding sources. In his brief in opposition, Plaintiff *argues* that since Kwitowski had authorized payment to the Caucasian employees in 2004 from other funds, "[t]his clearly shows" that Kwitowski had the power and discretion to pay Plaintiff in the same manner. Plaintiff's Brief in Opposition to Kwitowski, at 6. We disagree. At most, Kwitowksi's 2004 approval to pay the other employees from other funds shows only that Kwitowski was presented with a pay check to pay the other employees from other funding sources during the budget year 2004, and that Kwitowski authorized the payments. We note that the authorization to pay the two Caucasian employees from other sources occurred in 2004, a different budget year, which has no bearing on whether funds from other sources were available in 2005.

7

In the present case, Plaintiff has not alleged that Kwitowksi was presented with a pay check that would pay Plaintiff from other funding sources, and that Kwitoski refused to authorize such a payment. Instead, it is undisputed that Kwitowski was presented with a pay check to pay Plaintiff from the budget that everyone agrees did not have funding to pay Plaintiff. There is no question that Kwitoski has the discretionary power to *authorize* payments. But Plaintiff must show that Kwitowski has the power to authorize paying Plaintiff *from another source*. Although Plaintiff argued in his Brief that Kwitowski had such power, he refrained from alleging the same in his Amended Complaint. The allegations in the Amended Complaint do not change our prior conclusion that Kwitowski is entitled to qualified immunity.

### *Thompson's Reference to Legal Means of Paying Plaintiff*

Plaintiff also finds it significant that in his January 5, 2005 letter to Kwitowski, Thompson acknowledged that even though Plaintiff's funding had been cut from the budget that legal means of paying Plaintiff might be available. What Thompson actually stated was that the "only way that Mr. Conley can be paid as I see it is that he must be paid ou[t] of an existing budgeted position such as a Captain in the Bureau of Fire or Police i[f] a vacancy exists." (Ex. 2, attached to Plaintiff's Amended Complaint.) Plaintiff does not allege that a vacancy existed in an existing budgeted position so that Plaintiff could be paid from that source. In fact, Plaintiff never mentions what Thompson actually stated, instead preferring only to generically refer to Thompson's acknowledgment that legal means to pay Plaintiff might exist. (See Am. Compl., at ¶¶ 29, 32, & 41; Plaintiff's Brief in Opposition to Kwitowski, at 6; Plaintiff's Brief in Opposition to Thompson, at 5.) The failure to allege that a vacancy existed renders irrelevant Plaintiff's reliance on Thompson's acknowledgment of a legal way to pay Plaintiff.

8

*Available Funds From Which Thompson and Kwitowski Could Pay Plaintiff*

Finally, Thompson and Kwitowski both argue that no funds were available from which Thompson and Kwitowski could have paid Plaintiff anyway. We agree.

We previously concluded that Kwitowski is entitled to qualified immunity to the extent that he refused to sign Plaintiff's pay check because *the payment was not funded in the budget*. Plaintiff did not, and does not, take issue with this determination. Instead he argues that we cannot rely on the prior state court decisions that found that funds were not available to pay Plaintiff because it would be an inappropriate application of the doctrine of issue preclusion. Specifically, he argues that (i) whether the funding for the two Caucasian employees' positions was eliminated; (ii) whether Kwitowski continued to pay two Caucasian employees from other funding sources; and (iii) whether similar funding sources as those used to pay the two Caucasian employees were available to pay Plaintiff, were not fully litigated in the State Court decisions, nor were they essential to the judgments. For purposes of the motions to dismiss we assume that (i) and (ii) are true, which leaves as the critical issue whether other funding sources were available to pay Plaintiff.

Plaintiff added allegations to his Amended Complaint to allege not only that funds existed from other sources, but also that around January 10, 2005, the Mayor had "proposed paying Plaintiff from funds that were available in the police and fire budget and had taken steps to effectuate this plan." (Am. Compl., at ¶ 35.) In seeking mandamus relief in State Court to compel Kwitowski to sign Plaintiff's pay check, the Mayor at that time asserted, in part, that "he had the ability to transfer funds allocated to the Department of Public Safety in order to pay the Public Safety Director because funds were available from other line items within that department; . . . ." Filippi, No. 10180-2005, Op. at 10. But the Court of Common Pleas found that in fact funds were not available

9

to pay Plaintiff specifically noting that the Mayor "had, and may still have, the limited ability to transfer funds from one budget account to another," but that ability was subject to a $5000 cap. Filippi, No. 10180-2005, Op. at 14. Whatever plan of the Mayor's Plaintiff is referring to, we know that it did not involve the Mayor's limited ability to transfer funds from one budget account to another as the Mayor did not make such a transfer and Plaintiff does not allege that he did.

Plaintiff also argues that we cannot rely on the state court decisions because they were only concerned with "whether Plaintiff's position could have been funded under the letter of local ordinance." (Plaintiff's Brief in Opposition to Kwitowski, at 8; Plaintiff's Brief in Opposition to Thompson, at 6-7.) Presumably Plaintiff concedes that "under the letter of local ordinance" his position was not funded. Unfortunately, he does not elaborate on some other way his position could have been funded expect to vaguely state that it could have been funded similar to how the two Caucasian employees were funded. But as we have seen, Kwitowski and Thompson lacked the power to fund Plaintiff's position; the Mayor's power to transfer funds was limited; and the "legal means" of funding Plaintiff's position referred to by Thompson was not available since an appropriate vacancy did not exist. We are left with the implication, not stated in the Amended Complaint or in the Briefs, that Plaintiff believes that the two Caucasian employees were paid from other funding sources in some "extra-legal" manner, outside the letter of local ordinance, or by some "gentlemen's agreement" that Plaintiff is reluctant to state. Plaintiff makes no such speculative allegations, and even if he did, they would not save his claims. We find Plaintiff's allegation that his position could have been funded similar to how the two Caucasian employees were funded to be an unsupported conclusion that we need not credit. Miree v. DeKalb County, *Ga.*, 433 U.S. 25, 27 n.2 (1977).

We thus have the following undisputed facts:

(1) Plaintiff's funding had been eliminated from the budget;

(2) the Common Pleas Court determined that signing Plaintiff's check was a discretionary function that Kwitowski could not be compelled to perform when he had a good faith basis to believe the funds were not available, Filippi, No. 10180-2005, Op. at 14;

(3) on appeal the Commonwealth Court explained that the "Controller may not be compelled to sign a salary check when there is no appropriation of money with which to pay that check," Filippi, No.703 C.D. 2005, Op., at 6;

(4) the Commonwealth Court concluded "that there is no mandatory duty to require Controller to authorize a payment that is not funded in the budget," id. at 8;

(5) that there was no vacancy in an existing budgeted position such as a Captain in the Bureau of Fire or Police from which Plaintiff could have been paid;

(6) that the Mayor had "the limited ability to transfer funds from one budget account to another," subject to a monetary cap of no more than $5000, Filippi, No. 10180-2005, Op. at 14, but there is no allegation that the Mayor ever did transfer funds;

(7) that to transfer funds from one budget account to another in excess of $5000 required the approval of Council, Filippi, No. 10180-2005, Op. at 14 (a legislative act that would be immune from suit); and

(8) neither Thompson nor Kwitowski had the power to transfer funds in order to pay Plaintiff.

Thus we agree with Defendants that no other funding source was available from which Thompson or Kwitowski could have paid Plaintiff.

Viewing the facts in a light most favorable to Plaintiff we conclude that his claims against Thompson and Kwitowski cannot be sustained. Even if we accept as true that two similarly situated Caucasian employees were treated differently than Plaintiff, there are no well-founded allegations to connect the different treatment to any conduct by Thompson or Kwitowski. Thompson wrote a letter to Kwitowski requesting that he not authorize payment to Plaintiff since he knew that funding

for Plaintiff's position did not exist. Kwitowski received the letter and did not authorize payment to Plaintiff. There are no allegations that Kwitowski or Thompson had the authority or the discretion to pay Plaintiff from other sources, and Plaintiff cannot show that Kwitowski or Thompson could have obtained funds to pay Plaintiff from another source. It may well be that the two Caucasian employees were treated differently, but Plaintiff has not alleged facts to show that the different treatment is due to unconstitutional conduct on the part of Thompson or Kwitowski. We will grant the motions to dismiss and dismiss Thompson and Kwitowski from this action.

IV. Conclusion

Plaintiff's claims asserted against Defendant Kwitowski will be dismissed as he is entitled to qualified immunity for his discretionary act of not authorizing Plaintiff's pay check. Plaintiff's claims asserted against Defendant Thompson will be dismissed for failure to state a claim upon which relief can be granted.

An appropriate Order will be entered.

April 25, 2006
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Judge